## Case No. 337.

### The AMOS C. BARSTOW.

[8 Ben. 401.][1]

District Court, S. D. New York.   March, 1876.

COLLISION IN NARRAGANSETT BAY— STEAMER AND SCHOONER — CHANGE OF COURSE BY SCHOONER TO AVOID ANOTHER SCHOONER.

1. A schooner was sunk by a collision with a propeller in Narragansett bay. The schooner was beating up the bay, and tacked from the west shore and stood across on her port tack. While on this tack she saw, as she alleged, that she was likely to come in collision with another schooner, which was holding her starboard tack, if both vessels kept their courses, whereupon she again tacked and came on the starboard tack, and shortly afterwards was struck by the propeller's stem, on her starboard side, near amidships. On behalf of the propeller it was alleged, that, as she was coming down the bay, she saw the schooner coming from the west shore and ported her helm to go under the schooner's stern, and had swung off to starboard, when the schooner suddenly, and without notice or reason, came about on her starboard tack, when so near the propeller that she could not be avoided: *Held*, That the tacking of the schooner, on the evidence, was so short a time before the collision as not to leave room for the propeller, which had taken measures, by porting, to go under the schooner's stern, as she was going east, to change her course so as to get under the stern of the schooner as she was going west;

2. That though such change of course by the schooner might not have been a fault, as respected the other schooner, which she was trying to avoid, that did not show that she was not in fault as respected the propeller;

3. That, the steamer was not in fault in not slowing before the schooner changed her course; that she took proper measures in time to avoid the schooner and stopped and backed as soon as there was any apparent necessity for it; and that she was not chargeable with the consequences of the collision.

[In admiralty. Libel by the Pennsylvania Railroad Company, owners of the schooner Wind, against the propeller Amos C. Barstow, for damages caused by collision. Libel dismissed, with costs.]

Beebe, Wilcox & Hobbs, for libellants.

R. D. Benedict and J. Sherwood, for claimants.

[1][Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]

BLATCHFORD, District Judge. This is a libel filed by the Pennsylvania Railroad Company as owners of the schooner Wind, against the propeller Amos C. Barstow, to recover for the damages sustained by the libellants, by means of a collision which took place about 2 o'clock A. M. on the 17th of April, 1874, between the schooner and the propeller, in the western channel of Narragansett bay, between Conanicut island and the main land, not far above the south end of the island. The propeller was going down the bay and the schooner was beating up against the wind. Although the sky was obscured by clouds, and the stars were not visible, it was not thick or foggy, and there was no difficulty in seeing the lights of vessels. Both the propeller and the schooner had their proper lights set and burning. While the propeller was up the bay from the schooner, and going down, the schooner, from being on her starboard tack, heading to the western shore, came about under the western shore to her port tack and stood over towards the eastward. The wind was about north-east and the schooner's course was about east-south-east. The channel there is from a mile and a quarter to a mile and a half wide.

The libel alleges, that, when the schooner had just filled away on such port tack, she saw the propeller's lights. bow and stern and green lights, to the northward and eastward, up the channel; that, after the schooner had kept on such port tack for a short distance, she saw that she was likely to collide with another schooner which was on the starboard tack, if both kept their courses; that she then tacked and came on to the starboard tack; that, when she commenced to make such last tack, the propeller was more than a quarter of a mile to the eastward and northward of the schooner, and at a long distance from her course; that the propeller had not changed her course when the schooner came about, but, just as the schooner was filling away on such starboard tack, it was discovered that the steamer had ported and was rapidly closing in on the schooner and her course; that the propeller came on, still swinging at a rapid rate, until very close to the schooner, when her machinery stopped working but her headway was still rapid; and that, when it was seen that the propeller was evidently coming into the schooner, and in order, if possible, to make the blow a glancing one, the wheel of the schooner was kept hard-a-starboard, and the swing was kept up until she was struck by the propeller heavily, head on, at about amidships, cutting into her and causing her to sink. The libel alleges, as faults on the part of the propeller, causing the collision, that she did not have a proper lookout; that she did not keep on her course instead of porting, or, if any change was necessary, did not starboard instead of porting; that she did not starboard after she had ported, when she found that the schooner was standing in shore; that she did not take the proper measures in time to avoid the schooner; and that she did not stop and back in time to avoid the schooner.

The answer alleges, that, after the propeller, in going down the western channel, had passed Dutch island, she discovered a number of schooners and small sailing vessels, most of them on the eastwardly side of the channel, on their course up the bay, on the starboard tack, showing green lights, and also discovered the libellants' schooner on her starboard tack, on the westerly side of the channel, showing a green light, and, soon thereafter, nearing the west side, changing to the port tack, shutting in the green light and showing a red light; that the course of the propeller was then south by west; that she was not on the easterly side, but near the middle of the channel, and was making her way to the leeward of the said schooners and small sailing vessels, which were on the starboard tack, having ample room and time to pass ahead of them; that the movements of the libellants' schooner were closely watched by those on board of the propeller, and, observing her progress from the westerly side on her port tack last mentioned, it was determined to keep to the starboard, so as to pass under her stern; that, accordingly, as the schooner was nearing the centre of the channel, on her port tack last mentioned, the wheel of the propeller was put hard to port, and her course changed from south by west to west-south-west; that, if the schooner had stood her tack out, or kept on her course, as she was bound to do, the propeller would have passed well under the stern of the schooner and no danger of collision would have been incurred; that, thereafter, and when the schooner, on her port tack, had reached a point about 400 or 500 feet ahead of the propeller, and one or two points off the port bow of the propeller, she suddenly, without any apparent reason, and without giving any signal, having ample room to proceed on her course, came about with great rapidity, changing her course and her tack, shutting in her red light, and showing her green light to the propeller; that, immediately, seeing this unexpected change of the course of the schooner, orders were promptly given on board of the propeller, and promptly executed, to slow, stop and back her; and that the collision was caused wholly by the negligence and unseamanlike conduct of those on board of the schooner, in not keeping on her course and standing out her port tack, and, if there was any fear of collision with the other schooner, in not giving way instead of going about, in not porting her helm, after she had made her last tack, instead of putting her helm hard to starboard, and in not showing a lighted torch or giving any signal, by lights or otherwise, of her

intention to change her tack, in time to enable those on board of the propeller to understand her proposed movements.

The libel admits that the schooner changed her course in the presence of the propeller, and went from her port tack to her starboard tack, after she had seen the lights of the propeller, and knew that that vessel was a steamer coming down the channel. But the libel alleges, that, when the schooner commenced to make such starboard tack, the propeller was a long distance from the course of the schooner, and had not yet ported to go under the stern of the schooner. This allegation is not borne out by the evidence. It is clearly established, that the red light of the schooner was seen from the propeller when the schooner was well over to the western shore, and that the propeller then properly discharged her duty of taking measures to avoid the schooner, by porting her helm, so as to pass under the stern of the schooner. She did this some time before the schooner left her port tack. She would have passed safely under the stern of the schooner, if the schooner had not suddenly changed her course, and thrust herself on the course of the propeller. It is impossible to see any fault in the propeller in any of the particulars alleged in the libel. Her lookout was adequate, because those in her pilot house saw the schooner's red light in ample season, and watched it, and took timely measures to avoid the schooner. It was proper for the propeller to port and go under the schooner's stern. It would have been imprudent for her to attempt to cross the bows of the schooner. She was on a swing to starboard, by porting, when she discovered that the schooner had starboarded; and, if it were an error of judgment for the propeller not then to starboard, which is not established, such error, in an exigency caused by the sudden movement of the schooner, cannot be imputed as a fault. The propeller did take proper measures in time to avoid the schooner, and she stopped and backed as soon as there was any apparent necessity for her doing so. This disposes of all the allegations of fault, contained in the libel. It was not incumbent on the propeller to diminish her usual speed until she saw that the schooner had changed her course.

The schooner may not have been in fault as against the other schooner, which it is alleged she was attempting to avoid; but that does not show she was not in fault as against the propeller, although engaged in discharging a duty she was bound to discharge towards such other schooner. She gave the propeller no signal, by a lighted torch or otherwise, when she was about to change her course suddenly, before she had run out her tack; and, even if, at the last moment, she could not avoid the other schooner by porting, but was obliged to starboard, it is entirely clear that she could

equally have avoided the other schooner, if she had ported when further away from such other schooner. When on her previous starboard tack she knew that such other schooner was following her on that tack, and that it would be her duty, on the port tack. to avoid such other schooner. The libel is dismissed, with costs.